Adolfo **DOLMETTA** and Vittorio Coda, as the liquidators of Banca Privata Italiana, S.p.A. (in compulsory liquidation), Plaintiffs-Appellants,

v.

**UINTAH NATIONAL CORPORATION,** David M. Kennedy, Sterling Bancorp a/k/a Standard Prudential Corporation, Sterling National Bank and Trust Company of New York, Talcorp, Inc., Solomon Eisenrod and Brooke Grant, Defendants-Appellees.

No. 959, Docket 82–7810.

United States Court of Appeals, Second Circuit.

Argued March 4, 1983.

Decided June 28, 1983.

Frank H. Wohl, New York City (Daniel R. Benson, Rosenman, Colin, Freund, Lewis & Cohen, New York City, of counsel), for plaintiffs-appellants.

Kevin P. Hughes, New York City (Irwin H. Warren, Joseph S. Allerhand, Weil, Gotshal & Manges, New York City, of counsel), for defendant-appellee Uintah National Corp.

Jay G. Strum, New York City (Phillip A. Geraci, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for defendants-appellees Sterling Bancorp and Sterling Nat. Bank & Trust Co. of New York.

James A. Moss, New York City (Herrick, Feinstein, New York City, of counsel), for defendants-appellees Talcorp., Inc. and Solomon Eisenrod.

Merrell E. Clark, Jr., New York City (Tucker Webb, Winthrop, Stimson, Putnam & Roberts, New York City, of counsel), for defendant-appellee David M. Kennedy.

William M. Barron, New York City (Walster, Conston, Schurtman & Gumpel, New York City, of counsel), for defendant-appellee Brooke Grant.

Before FEINBERG, Chief Judge, and TIMBERS and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This diversity case arises in the aftermath of the financial chicanery engaged in

by the notorious international financier, Michele Sindona, whose unscrupulous machinations resulted in his conviction for fraud. *See United States v. Sindona,* 636 F.2d 792 (2d Cir.1980) (affirming conviction), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981). Plaintiffs are two liquidators of a Sindona-owned bank in Milan, Italy. They allege that 27 million dollars were embezzled from the bank, funneled out of Italy in 1973, and used to purchase 1.6 million shares, or 53 per cent, of the common stock of Talcott National Corporation, a large, publicly-traded American banking company. Plaintiffs instituted an action in the United States District Court for the Southern District of New York (Brieant, J.) to recover the 1.6 million shares. In their complaint they alleged seven causes of action which, on motion of the defendants, the district court dismissed as time-barred under the applicable New York statutes of limitations. We affirm the dismissal of plaintiffs' second through seventh causes of action, but the first cause of action was not time-barred. Therefore, the dismissal of that action is reversed and the matter remanded to the district court for further proceedings.

## BACKGROUND

Plaintiffs Adolfo Dolmetta and Vittorio Coda, the liquidators of Banca Privata Italiana S.p.A. (Bank), set forth the facts giving rise to their complaint as follows. In early 1973 Sindona, then in complete control of Banca Unione, fraudulently diverted 27 million dollars to Fasco International Holding, S.A., a Luxembourg corporation that Sindona also controlled. Simultaneously, he caused Fasco International to use the misappropriated funds to purchase 1.6 million shares of Talcott National Corporation. Shortly thereafter, Banca Unione became Banco Privita Italiana, S.p.A. On September 26, 1974, the day before the Italian Ministry of the Treasury ordered the Bank into liquidation, Sindona caused the Talcott shares to be transferred from Fasco International to its Delaware affiliate Fasco, Inc. That same day Fasco, Inc. granted defendants Sterling Bancorp and its subsidiary Sterling National Bank and Trust Company of New York (Sterling Bank) an option to purchase the Talcott shares.

On April 1, 1975 defendant Talcorp, Inc. purchased the shares from Fasco, Inc. Disclaiming beneficial ownership of the shares, Talcorp maintained that it was simply holding the stock on behalf of Sterling Bancorp and Sterling Bank. Sterling Bancorp and Sterling Bank allegedly financed Talcorp's purchase of the Talcott shares and retained the right to dictate subsequent sales of the shares. On January 29, 1976 defendant Uintah National Corporation purchased the shares from Talcorp, purportedly with knowledge of the way in which they had been acquired. Uintah had been formed in late 1975 by defendants David M. Kennedy and Brooke Grant. Kennedy had been a director of Fasco International since shortly after that company acquired the Talcott shares. In his capacity as director, Kennedy had voted to ratify Fasco International's purchase of these shares. During the period 1974 through 1975, Kennedy had also held a proxy over the shares.

Originally filed on January 29, 1982 and twice amended, plaintiffs' complaint asserts seven causes of action. The first cause of action, against Uintah only, alleges that Uintah acquired the Talcott shares in bad faith with knowledge of the Bank's adverse claim to the shares, and that Uintah therefore is a constructive trustee under New York law and holds the stock for the Bank's benefit. The second through sixth causes of action seek damages from all defendants for their asserted participation in the January 29 transfer, which participation was allegedly part of a fraudulent scheme directed against the Bank. Specifically, the liquidators allege that the defendants defrauded the Bank by conveying the shares to Uintah (second claim); the defendants aided and abetted Sindona's fraud on the Bank (third claim); the defendants aided and abetted Sindona's breach of fiduciary duty to the Bank (fourth claim); the defendants were unjustly enriched as a result of their fraud against the Bank (fifth claim); and the defendants violated the anti-fraud provision of section 10(b) of the Securities Exchange Act of 1934 (sixth

claim). Plaintiffs' seventh claim alleges that the Talcott stock transactions were fraudulent conveyances and that under New York law the transfers should be set aside.

Subsequent to the filing of the complaint, defendants moved to dismiss the action as barred by the applicable statutes of limitations and, alternatively, as failing to state claims upon which relief could be granted. Reasoning that the law of New York, the forum state, governed the timeliness of plaintiffs' claims, which the district court characterized as sounding in fraud, it held that the applicable limitations period was six years from the date of the action complained of or two years from the date of discovery, whichever period ended later. Finding that plaintiffs knew or should have known of the acts complained of more than two years prior to the filing of their complaint, the district court concluded that the instant suit was commenced beyond the two-year limitations period. It further held that the suit was untimely under the alternative six-year limitations period because the Bank's only injury occurred when Sindona embezzled funds in 1973, approximately nine years before the plaintiffs filed their complaint. Consequently, Judge Brieant dismissed plaintiffs' complaint in its entirety.

## DISCUSSION

Plaintiffs contend that the district court erred in the manner in which it applied the six-year limitation. According to plaintiffs the six-year limitations period commenced on the date of the transfer of the Talcott stock to Uintah. Under this theory plaintiffs' complaint of January 29, 1982 was filed timely within six years of the accrual of the claims stated because, under New York law, the day of accrual is excluded. *See* N.Y.Gen.Constr. Law § 20 (McKinney Supp. 1982–1983).

### First Cause of Action

■ With respect to the Bank's first claim, which seeks to impose a constructive trust over the Talcott shares held by Uintah on the ground that Uintah acquired the shares in bad faith, the district court erred in dismissing the action as untimely. Since a cause of action for a constructive trust is one "for which no limitation is specifically prescribed by law," it is governed by New York's six-year statute of limitations, N.Y. Civ.Prac.Law and Rules (CPLR) 213(1) (McKinney 1972) and runs from the occurrence of the wrongful act or event which creates a duty of restitution. *See Scheuer v. Scheuer,* 308 N.Y. 447, 450, 126 N.E.2d 555 (1955); *Augustine v. Szwed,* 77 A.D.2d 298, 301, 432 N.Y.S.2d 962 (4th Dep't 1980); *Mann v. Mann,* 77 A.D.2d 866, 431 N.Y.S.2d 63 (2d Dep't 1980). In a felicitous and much-quoted phrase Judge Cardozo said, "[a] constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378 (1919) (citation omitted); *see Simonds v. Simonds,* 45 N.Y.2d 233, 241, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978); 5 A. Scott, *The Law of Trusts* § 462, at 3413 (3d ed. 1967). Here plaintiffs claim that Uintah holds 1.6 million shares of Talcott stock which in good conscience—knowing the unsavory circumstances that made the purchase possible—it should not retain, but should deliver to plaintiffs standing in the shoes of the defrauded Italian Bank.

■ Since Uintah acquired the Talcott shares on January 29, 1976 the claim that it held the stock in constructive trust could not have accrued until January 29, 1976, the date Uintah began its allegedly wrongful possession as against the Bank. Uintah's argument—that because other defendants adversely possessed the stock prior to 1976, a cause of action upon a theory of constructive trust arose prior to 1976—misses the mark. While such a claim against other defendants may have accrued prior to 1976, plaintiffs' claim of a constructive trust is against Uintah only, not against the other defendants. *Cf. Kunstsammlungen Zu Weimar v. Elicofon,* 678 F.2d 1150, 1161 (2d

Cir.1982) (conversion action under New York law to recover stolen property from transferee of thief not time-barred even though action against thief would have been untimely because claim against transferee did not accrue until transferee's wrongful possession of property). Since plaintiffs timely asserted their cause of action for a constructive trust against Uintah on January 29, 1982, within six years of the beginning of Uintah's allegedly wrongful possession of the Talcott stock, the action was improperly dismissed.

### Other Causes of Action

■ The district court correctly dismissed the six remaining causes of action. With respect to claims two, three and six, which generally allege that Sindona and the named defendants defrauded the Banca Unione through some conspiracy of unknown magnitude, the applicable six-year statute of limitations accrued when Banca Unione suffered some loss as a result of the defendants' fraudulent acts, see *Stull v. Bayard*, 561 F.2d 429, 432 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978). As the district court correctly recognized, the losses from the fraud, if any, occurred in 1973 when Sindona embezzled Banca Unione's funds. Thus, plaintiffs' causes of action for the fraud perpetrated against Banca Unione accrued no later than 1973 and were barred in 1979, several years prior to the filing of the complaint. Plaintiffs attempt to avoid this conclusion by characterizing the transfer of Talcott stock in January 1976 as a fraud separate and distinct from the 1973 embezzlement by Sindona. This analysis is artificial and unconvincing. The 1976 transfer did not represent a new and separate loss to the Bank. Rather, the conveyance was at most a post-fraud secretion designed to preserve the success of a fraud that had occurred long since.

■ Plaintiffs' fourth cause of action, which alleges that the defendants aided and abetted Sindona's breach of his fiduciary duty, is also stale. Despite the imaginative title plaintiffs assigned to this claim, its substance is the same fraudulent embezzlement scheme underlying claims two, three and six. When applying a statute of limitations, courts look at the essence of the stated claim and not the label by which a plaintiff chooses to identify it. *See Morrison v. National Broadcasting Co.*, 19 N.Y.2d 453, 459, 280 N.Y.S.2d 641, 227 N.E.2d 572 (1967). The fourth cause of action sounds in fraud; as such, it is time-barred for the same reasons as causes of action two, three and six.

Moreover, even were plaintiffs' claim of breach of a fiduciary duty to be analyzed separately from claims two, three and six, it would still be untimely. Contrary to plaintiffs' contention, the defendants could not have aided and abetted a breach of a fiduciary duty by Sindona as late as 1976 because, as the district court correctly noted, Sindona had no fiduciary obligation to the Bank in 1976. While Sindona, as Banca Unione's majority shareholder, was alleged to have exerted such dominance over that bank prior to July 1974 as to give rise to fiduciary obligations, *see generally Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939); *Perlman v. Feldmann*, 219 F.2d 173, 175 (2d Cir.), *cert. denied*, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277 (1955); *Box v. Northrop Corp.*, 459 F.Supp. 540, 547 (S.D. N.Y.1978), *aff'd mem.*, 598 F.2d 609 (2d Cir.1979), his control was clearly extinguished prior to 1976. The record before us reveals that in September 1974 Banca Unione went into liquidation and court-appointed liquidators took over the firm's affairs. At that point Sindona's dominance over the bank's affairs and any fiduciary duty he owed it were at an end. Thus, if the defendants aided and abetted Sindona's breach of a fiduciary duty, that aiding and abetting must have occurred prior to 1976, more than six years before the instant complaint was filed. Because of this the fourth cause of action is time-barred under New York's applicable six-year statute of limitations. *See* CPLR 213 (McKinney Supp. 1982–1983).

■ The fifth cause of action, denominated "unjust enrichment" is also time-

**20**

barred as against all defendants save Uintah. The essence of the fifth claim is that the defendants were unjustly enriched as a result of their fraudulent acquisition of Talcott stock. Since all of the defendants, except Uintah, acquired their alleged interests in this stock before January 29, 1976, the actions for unjust enrichment accrued, if at all, more than six years prior to the filing of the complaint. These claims are, therefore, also untimely under the applicable six-year limitation period.

As to Uintah, the fifth cause of action, although not stale, was properly dismissed since it fails to state a claim upon which relief may be granted. To recover on a theory of unjust enrichment a plaintiff must prove that the defendant was enriched, that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff. *See Indyk v. Habib Bank Ltd.,* 694 F.2d 54, 57 (2d Cir.1982). Here plaintiffs have failed to allege that Uintah was enriched at the expense of the Bank by virtue of Uintah's January 29, 1976 stock acquisition.

Plaintiffs' seventh and final claim is that the 1976 transfer to Uintah of the Talcott stock was a fraudulent conveyance as to Fasco International's creditors (i.e., the Bank) which must be set aside. Here, again, the period of limitations governing such claims under New York law is six years. CPLR 213(8) (McKinney Supp. 1982–1983); *see Quadrozzi Concrete Corp. v. Mastroianni,* 56 A.D.2d 353, 358, 392 N.Y. S.2d 687 (2d Dep't 1977), *appeal dismissed,* 42 N.Y.2d 824 (1977). Accepting as true the allegations of plaintiffs' complaint, the last transfer of Talcott stock by Fasco, Inc. occurred on April 1, 1975. Consequently, any action arising out of a conveyance that defrauded Fasco's creditors would have accrued on or before April 1, 1975. Plaintiffs' failure to file suit until January 29, 1982 requires the dismissal of the seventh cause of action.